# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **PATRICK C. JOHNSON** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Civil Action No. WGC-13-640** |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social Security** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## MEMORANDUM OPINION

Plaintiff Patrick C. Johnson ("Mr. Johnson" or "Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act, 42 U.S.C. §§ 401-433, 1381-1383f.  The parties consented to a referral to a United States Magistrate Judge for all proceedings and final disposition.  *See* ECF Nos. 4-6.[1]  Pending and ready for resolution are Plaintiff's Motion for Summary Judgment (ECF No. 12) and Defendant's Motion for Summary Judgment (ECF No. 14).  No hearing is deemed necessary.  *See* Local Rule 105.6 (D. Md. 2011).  For the reasons set forth below, Defendant's Motion for Summary Judgment will be granted and Plaintiff's Motion for Summary Judgment will be denied.

---

[1]  The case was subsequently reassigned to the undersigned.

1. **Background**.

On September 4, 2007[2] Mr. Johnson protectively filed applications for DIB[3] and SSI alleging a disability onset date of February 1, 2003[4] due to paranoid schizophrenia, high blood pressure and a bad kidney.  *See* R. at 173-83, 222.  Mr. Johnson's applications were denied initially on January 11, 2008.  R. at 94-98.[5]  On March 3, 2008 Mr. Johnson requested reconsideration.  R. at 99.  On an unknown date[6] the claims were denied again.  *See* R. at 100-03. On September 18, 2008 Mr. Johnson requested a hearing by an Administrative Law Judge ("ALJ").  R. at 104-05.

On November 20, 2009 an ALJ convened a hearing.  R. at 54-64.  Mr. Johnson was represented by counsel.  During the hearing the ALJ obtained testimony from Mr. Johnson.  In the December 16, 2009 decision the ALJ found Mr. Johnson has not been under a disability, as defined in the Social Security Act, from January 29, 2007 through the date of the decision.  R. at 82.  On January 19, 2010 Mr. Johnson requested a review of the hearing decision.  R. at 132-33. On May 9, 2011 the Appeals Council remanded the case to the ALJ.  R. at 84.  The Order of Appeals Council, remanding the case to the ALJ, states,

> The Administrative Law Judge issued a decision on December 16, 2009.  The claimant has asked the Appeals Council to review this decision.

---

[2]  Plaintiff previously filed applications for Disability Insurance Benefits and Supplemental Security Income on January 29, 2007.  *See* R. at 164-72.

[3]  "The claimant meets the insured status requirements of the Social Security Act through December 31, 2014."  R. at 15.

[4]  At the initial hearing and the post remand hearing before an Administrative Law Judge ("ALJ"), Plaintiff amended his onset date to January 29, 2007, the date of his earlier filed applications.  *See* R. at 35, 62-63.

[5]  The administrative file contains the denial letter for Supplemental Security Income but not the denial letter for Disability Insurance Benefits.  The administrative record also contains the initial denial letter dated March 13, 2007 for the Supplemental Security Income application of January 29, 2007.  R. at 89-93.

[6]  The denial letters for reconsideration are undated.  However, the Court Transcript Index preceding the administrative file lists August 5, 2008 as the date of denial.

The Appeals Council grants the request for review under the substantial evidence and error of law provisions of the Social Security Administration regulations (20 CFR 404.970 and 416.1470). Under the authority of 20 CFR 404.977 and 416.1477, the Appeals Council vacates the hearing decision and remands this case to an Administrative Law Judge for resolution of the following issues:

- The decision under Finding No. 4 indicates that the claimant has a severe mental impairment with moderate limitations in activities of daily living, maintaining social functioning and concentration, persistence or pace; however the decision does not contain rationale for "B" and "C" criteria rated using the special technique described in 20 CFR 404.1520a and 416.920a.

- The hearing decision does not contain an evaluation of the treating source opinion in Exhibit 2F from Mehdi Ghazinoor-Naini, M.D., dated January 2, 2007. Dr. Ghazinoor-Naini assessed that the claimant is disabled from January 3, 2007 through January 2, 2008, with marked difficulties in maintaining social functioning and "often" difficulties in maintaining concentration, persistence or pace.

- The hearing decision does not address the third party statements in Exhibits 6E and 12E in accordance with Social Security Ruling 06-3p.

- The claimant was found to have the residual functional capacity to perform light unskilled work with a sit/stand option. The claimant has limited dominant hand usage. The claimant should have limited public contact (Finding No. 5). However, the decision contains no rationale as to why the claimant has limited dominant hand usage and requires a sit/stand option. Further, there is no vocational evidence in the record regarding the extent to which the claimant's limitations erode the occupational base for light work.

Upon remand the Administrative Law Judge will:

- Update the record concerning the claimant's physical and mental impairments in order to complete the administrative record.

- Further evaluate the claimant's mental impairment in accordance with the special technique described in 20 CFR 404.1520a and 416.920a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 404.1520a(c) and 416.920a(c).

- Give consideration to the treating source opinion pursuant to the provisions of 20 CFR 404.1527 and 416.927 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the treating source to provide additional evidence and/or further clarification of the opinion (20 CFR 404.1512 and 416.912). Also, the Administrative Law Judge should address the third party statements in Exhibits 6E and 12E in accordance with Social Security Ruling 06-3p.

- Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and 416.945 and Social Security Ruling 96-8p).

- If warranted upon the expanded record, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base. The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

> In compliance with the above, the Administrative Law Judge will offer the claimant an opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision.

R. at 85-87.

A supplemental hearing was convened on November 14, 2011. R. at 33-53. Mr. Johnson was represented by counsel. The ALJ obtained testimony from Mr. Johnson, Mr. Johnson's mother and a vocational expert ("VE"). In the December 28, 2011 decision the ALJ found Mr. Johnson has not been under a disability, as defined in the Social Security Act, from January 29, 2007 through the date of the decision. R. at 27. On January 25, 2012 Mr. Johnson requested a review of the hearing decision. R. at 7-8. On December 26, 2012 the Appeals Council denied Mr. Johnson's request for review, R. at 1-6, thus making the ALJ's determination the Commissioner's final decision.

2. **ALJ's Decision**.

The ALJ evaluated Mr. Johnson's claims for DIB and SSI using the sequential evaluation process set forth in 20 C.F.R. §§ 404.1520, 416.920. Mr. Johnson bears the burden of demonstrating his disability as to the first four steps. At step five the burden shifts to the Commissioner. If Mr. Johnson's claims fail at any step of the process, the ALJ does not advance to the subsequent steps. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At step one the ALJ found Mr. Johnson has not engaged in substantial gainful activity since January 29, 2007, the alleged onset date of disability. R. at 76. The ALJ concluded at step two that Mr. Johnson has the following severe impairments: "diabetes mellitus, affective disorders, schizophrenic disorder, delusional (paranoid), schizoaffective and other psychotic disorder[.]" R. at 77. At step three the ALJ found Mr. Johnson does not have an impairment or combination of impairments which meets or medically equals a listed impairment. The ALJ specifically

considered Listing 12.04.[7]  The ALJ determined whether Mr. Johnson satisfied the "paragraph

B" criteria.  The ALJ found Mr. Johnson has *moderate* restriction in activities of daily living,

*moderate* difficulties in social functioning, *moderate* difficulties in concentration, persistence or

pace and *one or two* episodes of decompensation, each of extended duration.  R. at 77.  Because

Mr. Johnson's mental impairments did not cause at least *two marked* limitations or *one marked*

---

[7] *Affective Disorders:* Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome.  Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

A.  Medically documented persistence, either continuous or intermittent, of one of the following:

1.  Depressive syndrome characterized by at least four of the following:

  a.  Anhedonia or pervasive loss of interest in almost all activities; or

  b.  Appetite disturbance with change in weight; or

  c.  Sleep disturbance;  or

  d.  Psychomotor agitation or retardation; or

  e.  Decreased energy; or

  f.  Feelings of guilt or worthlessness; or

  g.  Difficulty concentrating or thinking; or

  h.  Thoughts of suicide; or

  i.  Hallucinations, delusions, or paranoid thinking; or

2.  Manic syndrome characterized by at least three of the following:

  a.  Hyperactivity; or

  b.  Pressure of speech; or

  c.  Flight of ideas; or

  d.  Inflated self-esteem; or

  e.  Decreased need for sleep; or

  f.  Easy distractability; or

  g.  Involvement in activities that have a high probability of painful consequences which are not recognized; or

  h.  Hallucinations, delusions  or paranoid thinking; or

3.  Biploar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

AND

B.  Resulting in at least two of the following:

  1.  Marked restriction of activities of daily living; or

  2.  Marked difficulties in maintaining social functioning; or

  3.  Marked difficulties in maintaining concentration, persistence, or pace; or

  4.  Repeated episodes of decompensation, each of extended duration;

OR

C.  Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

  1.  Repeated episodes of decompensation, each of extended duration; or

  2.  A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

  3.  Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P., App. 1 § 12.04 (2009).

limitation and *repeated* episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied. The ALJ then considered the "paragraph C" criteria and determined the evidence failed to establish the presence of the "paragraph C" criteria.

Next, the ALJ determined Mr. Johnson's residual functional capacity ("RFC"). The ALJ found Mr. Johnson has the RFC "to perform light unskilled work with a sit/stand option. The claimant has limited dominant hand usage. The claimant should have limited public contact." R. at 78. At step four the ALJ found Mr. Johnson is unable to perform his past relevant work. R. at 81. At step five the ALJ considered Mr. Johnson's age (28 years old on the alleged amended onset date; defined as a younger individual age 18-49), his education (high school; able to communicate in English), past work experience (transferability of job skills not an issue because Mr. Johnson's past relevant work is unskilled) and his RFC (light unskilled work with other limitations). Using the Medical-Vocational Guidelines as a framework for decision-making, the ALJ found Mr. Johnson "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of 'not disabled' is therefore appropriate under the framework of medical vocational rule 202.20."[8] R. at 82.

After the remand by the Appeals Council, the ALJ re-evaluated Mr. Johnson's claims for DIB and SSI using the sequential evaluation process set forth in 20 C.F.R. §§ 404.1520, 416.920. At step one the ALJ found Mr. Johnson has not engaged in substantial gainful activity since January 29, 2007, the alleged onset date of disability. R. at 15. At step two the ALJ determined Mr. Johnson has the following severe impairments: hypertension, sleep apnea, diabetes, obesity, residual effects of gunshot wound, paranoid schizophrenia and substance abuse disorder. *Id.* At

---

[8] As listed in Table No. 2—Residual Functional Capacity: Maximum Sustained Work Capability Limited to Light Work as a Result of Severe Medically Determinable Impairment(s), Rule 202.20 applies to a younger individual, a high school graduate or more educational background, whose previous work experience was unskilled or none. Rule 202.20 directs that such an individual is not disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.20 (2009).

step three the ALJ found Mr. Johnson does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. The ALJ thereafter explained why Mr. Johnson's impairments do not meet or medical equally any listed impairment.

The ALJ began by reviewing the evidence of record concerning Mr. Johnson's elbow impairment. The ALJ considered Listing 1.02,[9] particularly, Listing 1.02(A)[10] and Listing 1.02(B).[11]

> While the evidence supports a finding that the claimant has a severe limitation arising from the residual effects of a gunshot injury to the claimant's right elbow, the evidence is insufficient to establish that the impairment is of the severity required to establish a musculoskeletal impairment based on any of the requirements articulated at Section 1.02. While the claimant has experienced a more serious impairment from the disorder to the right upper extremity, the evidence does not support a finding of gross anatomical deformity. Accordingly, the evidence does not support a finding of listing-level impairment at section 1.02.

R. at 16.

The ALJ then considered Mr. Johnson's sleep apnea in light of Listing 3.10.[12] The ALJ determined this condition did not satisfy the listing level impairment. "Specifically, the record is devoid of evidence of arterial hypoxemia or mean pulmonary artery pressure greater than 40

---

[9]   *Major dysfunction of a joint(s) (due to any cause)*:   Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joints(s). With:

[10]   Involvement of one major peripheral weight-bearing joint (*i.e.,* hip, knee, or ankle), resulting in inability to ambulate effectively as defined in 1.00B2b[.]

[11]   Involvement of one major peripheral joint in each upper extremity (*i.e.,* shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02 (2011).

[12]   *Sleep-related breathing disorders.*   Evaluate under 3.09 (chronic cor pulmonale) or 12.02 (organic mental disorders).

mmHg." R. at 16. The ALJ also noted Mr. Johnson's sleep apnea does not cause a listing level impairment secondary to organic mental disorder.

The ALJ next noted Mr. Johnson's history of obesity. The ALJ recognized this condition supports a finding of impairment secondary to diabetes, but determined the evidence[13] did not support a listing level impairment in accordance with Listing 9.0 (*Endocrine System*).[14] Regarding Mr. Johnson's hypertension, the ALJ noted the evidence reveals this condition is well-controlled by medication but there is no evidence in the record that Mr. Johnson's hypertension has caused damage to other body systems. "Therefore, the undersigned concludes that the claimant's hypertension does not cause an impairment that meets the severity of listing-level impairment as set forth in the regulations." R. at 17. In considering Mr. Johnson's obesity in relation to Mr. Johnson's other impairments pursuant to Social Security Ruling 02-1p,[15] the ALJ determined the effect of Mr. Johnson's obesity[16] does not cause Mr. Johnson's other impairments (*i.e.,* hypertension, sleep apnea, diabetes, residual effects of gunshot wound, paranoid schizophrenia and substance abuse disorder) to meet or medically equal any listing.

---

[13] "The evidence does not support a finding of serious complications from diabetes to the physical body systems. The evidence supports a finding of mental impairment, that the evidence does not support a finding of listing level mental impairment secondary to diabetes." R. at 16.

[14] *Cause of impairment.* Impairment is caused by overproduction or underproduction of hormones, resulting in structural or functional changes in the body. Where involvement of other organ systems has occurred as a result of a primary endocrine disorder, these impairments should be evaluated according to the criteria under the appropriate sections. Medically acceptable imaging includes, but is not limited to, x-ray imaging, computerized axial tomography (CAT scan) or magnetic resonance imaging (MRI), with or without contrast material, myelography, and radionuclear bone scans. "Appropriate" means that the technique used is the proper one to support the evaluation and diagnosis of the impairment.

20 C.F.R. Pt. 404, Subpt. P, App. 1 §9.00 (2011).

[15] Titles II and XVI: Evaluation of Obesity, SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002).

[16] Mr. Johnson is 6 feet, 5 inches tall and weighs 320 pounds. R. at 18, 37. "The undersigned notes that the claimant's height and weight is consistent with a BMI of ~37.9 as calculated by the National Heart, Lung, and Blood Institute. While the evidence supports a finding that the claimant is obese, it does not support a finding of morbid obesity, as demonstrated in individuals with a BMI of 39 or higher." R. at 18.

Regarding Mr. Johnson's mental impairments (paranoid schizophrenia and substance abuse disorder) the ALJ considered Listings 12.02 (*Organic Mental Disorders*), 12.03 (*Schizophrenic, Paranoid and Other Psychotic Disorders*) and 12.09 (*Substance Addiction Disorders*). The ALJ first considered the "paragraph B" criteria for these listings. To satisfy the "paragraph B" criteria Mr. Johnson's mental impairment(s) must cause at least two marked restrictions in (a) activities of daily living, (b) maintaining social functioning and (c) maintaining concentration, persistence or pace, <u>or</u> a marked restriction in (a) activities of daily living, (b) maintaining social functioning and (c) maintaining concentration, persistence or pace and repeated episodes of decompensation, each of extended duration. In reviewing the evidence of record the ALJ rated the degree of Mr. Johnson's functional limitation in four broad areas. The ALJ determined Mr. Johnson has *mild* restriction of activities of daily living, *mild* difficulties in maintaining social functioning, *moderate* difficulties in maintaining concentration, persistence or pace, and *one or two* episodes of decompensation of extended duration. R. at 17. Because Mr. Johnson's mental impairments, including substance addiction disorder, do not cause at least *two marked* restrictions or *one marked* restriction and *repeated* episodes of decompensation, the ALJ found the "paragraph B" criteria are not satisfied. *Id.* The ALJ then considered the "paragraph C" criteria in determining whether Mr. Johnson's mental impairment(s) meets or medically equals any listing. The ALJ found the "paragraph C" criteria are not satisfied.

The ALJ next assessed Mr. Johnson's RFC. After a careful consideration of the record the ALJ found Mr. Johnson has the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant requires the option to alternate between sitting and standing and requires limited public contact." R. at 17. At step four the ALJ found Mr. Johnson is unable to perform his past relevant work. R. at 26.

At step five the ALJ considered Mr. Johnson's age (28 years old on the alleged disability onset date), his education (high school; able to communicate in English), past work experience (transferability of job skills is not material because Mr. Johnson's past relevant work is unskilled) and his RFC (light work with some restrictions). The ALJ found the Social Security Administration met its burden of proving that Mr. Johnson is capable of performing various other jobs[17] that exist in significant numbers in the national economy, relying on the testimony of the VE. R. at 26-27, 49-50. Accordingly, the ALJ concluded that Mr. Johnson has not been under a disability, as defined by the Act, from January 29, 2007 through the date of the decision. R. at 27.

3. **Standard of Review**.

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Pass v. Chater*, 65 F.3d at 1202; *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance, of the evidence presented, *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted), and it must be sufficient to justify a refusal to direct a verdict if the case were before a jury. *Hays*, 907 F.2d at 1456. This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence. *Id.*

---

[17] At the light, unskilled level a preassembler for printed circuit boards, a router and an assembler II for small products. At the sedentary, unskilled level a taper for printed circuit boards, a final assembler of bench work and an addresser. R. at 26-27, 49-50.

4. **Discussion**.

    *A.    Alleged Failure to Utilize the "Special Technique"*

When evaluating mental impairments, the Social Security regulations outline a particular process.

> (b) *Use of the technique.* (1) Under the special technique, we must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s) . . . If we determine that you have a medically determinable mental impairment(s), we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document our findings in accordance with paragraph (e)[18] of this section.
>
> (2) We must then rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)[19] of this section and record our findings as set out in paragraph (e) of this section.

---

[18] *Documenting application of the technique*. At the initial and reconsideration levels of the administrative review process, we will complete a standard document to record how we applied the technique. At the administrative law judge hearing and Appeals Council levels (in cases in which the Appeals Council issues a decision) . . . we will document application of the technique in the decision. The following rules apply:
. . .
  (4) At the administrative law judge hearing and Appeals Council levels . . . the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

[19] *Rating the degree of functional limitation*. (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment.
  (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. . . .
  (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. . .
  (4) When we rate the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

20 C.F.R. §§ 404.1520a, 416.920a (2011). Plaintiff argues the ALJ failed to utilize the mandated special technique. In the decision the ALJ did not *first evaluate* Mr. Johnson's pertinent symptoms, signs and laboratory findings to determine if he had a medically determinable mental impairment(s) at steps two and three. "The Administrative Law Judge, without any explanation whatsoever, simply rated the degree of functional limitation in the four required areas of function[.]" ECF No. 12-1 at 11. Consequently, the ALJ's evaluation of Mr. Johnson's mental impairments is not supported by substantial evidence and thus defies review by this court.

Upon a review of the ALJ's decision, it is undisputed that the ALJ did not evaluate, at step two or step three, the pertinent symptoms, signs and laboratory findings in determining whether Mr. Johnson's paranoid schizophrenia and substance abuse disorder are severe impairments (step two) and whether Mr. Johnson's paranoid schizophrenia and substance abuse disorder meet or medically equal the severity of a listed impairment (step three). The ALJ deferred his detailed assessments of these mental disorders (as well as Mr. Johnson's other severe impairments) to the discussion portion following the RFC determination. *See* R. at 18-25. It is unclear to the undersigned why the ALJ did not abide by the process outlined in the regulations. This failure to comport with the regulations however does not preclude this court's review. Although inserted in the wrong place, the ALJ's decision contains an adequate analysis to permit a review of his findings. *See Casey-Kriechbaum v. Comm'r, Soc. Sec. Admin.*, No. SAG-11-320, 2013 WL 500723, at *2 (D. Md. Feb. 7, 2013).

The ALJ discussed Mr. Johnson's activities of daily living in the following paragraphs:

> The claimant testified that his mother performs all of his cooking, cleaning, and grocery shopping. He described a typical day as getting up in the morning, eating breakfast, and watching television. He said that he [] then eats lunch and goes to sleep. He admitted that he is able to navigate public transportation independently.

R. at 18

> [In a functional report completed in support of his application for disability benefits] [t]he claimant admitted that he prepares his own meals, although he denied performing any household chores. The claimant said he was too tired to do any house or yard work but reported that he sits on his front porch in good weather. The claimant said that he enjoys watching television and listening to music on a daily basis.
>
> *                              *                              *
>
> [Ms. Diggs, the claimant's mother] reported that the claimant spends his time watching television, listening to music, and sitting on the porch . . . Ms. Diggs indicated that the claimant prepares his own meals on a daily basis but reported that he does not perform any household chores due to low energy.

R. at 20.

> *                              *                              *
>
> Dr. Taller performed a consultative evaluation on behalf of the State agency in June 2008 and acknowledged his history of hypertension, diabetes, and paranoid schizophrenia . . . He was attending auto mechanic school five days per week . . . The claimant admitted that he performed his own household chores and prepared his own meals.

R. at 23.

> *                              *                              *
>
> [D]espite the claimant's allegations of disabling impairment, he has admitted his ability to perform a broad range of activities of daily living. The undersigned concludes that the claimant's demonstrated functional independence in attending school, preparing his own meals, performing household chores, and navigating public transportation severely undermines the credibility of his statements regarding the severity of his limitations.

R. at 20.

With regard to Mr. Johnson's social functioning, Mr. Johnson acknowledged spending "time with other people whenever someone stops by." R. at 20. His mother reported her son talks to people on a regular basis while sitting on the porch and further that her son has no

problems getting along with others as long as he takes his medication. *Id.* Dr. Taller conducted a consultative psychiatric examination of Mr. Johnson in June 2008. R. at 418-21. As noted in the ALJ's decision Dr. Taller concluded Mr. Johnson's social interaction was significant for a blunted and superficial affect. R. at 24. Dr. Walcutt, a non-examining psychologist completing a "Mental Residual Functional Capacity Assessment" in July 2008, R. at 454-57, opined that Mr. Johnson appears to have the ability to interact and relate to others socially. R. at 24.

Concerning Mr. Johnson's concentration, persistence or pace, the ALJ noted, in completing the functional report in support of his application, Mr. Johnson disclosed that he needs reminders to take his medication. R. at 19. At the hearing Mr. Johnson testified he discontinued his studies at mechanic school and switched to office automation because he had problems remembering what he had learned. *Id*.

The ALJ summarized the opinion evidence from various medical sources. In March 2007 on behalf of the State agency, Dr. Dale assessed Mr. Johnson's mental residual functional capacity. Dr. Dale opined Mr. Johnson has a moderate limitation in the ability to understand, remember and carry out detailed instructions, a moderate limitation in maintaining attention and concentration for extended periods, a moderate limitation in performing activities within a schedule and a moderate limitation in performing at a consistent pace without an unreasonable length and number of rest periods. R. at 22. In January 2008 on behalf of the State agency Dr. Keyes assessed Mr. Johnson's mental residual functional capacity. Dr. Keyes similarly found Mr. Johnson is moderately limited in his ability to understand, remember and carry out detailed instructions,[20] moderately limited in performing activities within a schedule, moderately limited in being punctual within customary tolerances as well as moderately limited in performing at a

---

[20] Dr. Keyes, in fact, found Mr. Johnson is **not** significantly limited in the ability to carry out detailed instructions. *See* R. at 400.

consistent pace without an unreasonable number and length of rest periods. R. at 23. A third assessment of Mr. Johnson's mental residual functional capacity was conducted by Dr. Walcutt on behalf of the State agency in July 2008. Dr. Walcutt determined Mr. Johnson is moderately limited in his ability to understand, remember and carry out detailed instructions, moderately limited in maintaining attention and concentration for extended periods and moderately limited in performing at a consistent pace without an unreasonable length or number of rest periods. Dr. Walcutt further opined Mr. Johnson is able to manage within a basic routine despite fluctuations in attention and concentration. R. at 24.

The ALJ also considered other evidence concerning any limitations in Mr. Johnson's concentration, persistence or pace. Dr. Taller conducted a consultative psychiatric examination of Mr. Johnson in June 2008. Dr. Taller found Mr. Johnson's capacity for understanding, memory, sustain concentration, and persistence was preserved. R. at 24. In November 2007 a comprehensive career assessment report was generated and Mr. Johnson demonstrated no overt concentration or attention problems. Mr. Johnson was able to follow verbal instructions but had difficulty following written instructions beyond relatively basic ones. Mr. Johnson demonstrated an average work pace for manually oriented tasks but demonstrated a below average work pace for academically oriented or challenging activity. R. at 22.

Finally, regarding episodes of decompensation of extended duration, in reviewing the evidence, the ALJ noted Mr. Johnson's history of paranoid schizophrenia and psychiatric hospitalizations. Mr. Johnson takes medication which effectively controls his symptoms of paranoid schizophrenia. Mr. Johnson's own treating psychiatrist noted Mr. Johnson's treatment is complicated by a cycle of psychiatric symptom exacerbation and relapse when Mr. Johnson does not take his medication as prescribed. R. at 22. When Dr. Sloan performed a consultative

physical examination of Mr. Johnson in June 2008, Dr. Sloan noted Mr. Johnson's schizophrenia

was controlled by medication. R. at 24. During his June 2008 psychiatric evaluation by Dr.

Taller, Mr. Johnson denied ongoing paranoia. R. at 23. During the hearing Mr. Johnson

admitted a history of marijuana abuse as well as the use of marijuana laced with PCP. R. at 19.

Mr. Johnson's mother testified her son used "dippers" (another name for marijuana laced with

PCP) to quell his psychiatric symptoms. *Id.* The ALJ evaluated the above evidence as follows:

> [W]hile the claimant has been diagnosed with schizophrenia, he had also been smoking marijuana laced with PCP. Not surprisingly, in light of his PCP consumption, the claimant developed psychotic symptoms and he has required psychiatric detention and stabilization on multiple occasions.
>
> The claimant's medical records reflect that over time, his psychiatric symptoms have been controlled with medication when he takes the medication as prescribed. . . .

R. at 20.

Based on the above, although the ALJ failed to document the application of the special

technique at steps two and three, the ALJ's decision does not omit this mandatory process but

instead improperly organized the information under the discussion of Mr. Johnson's residual

functional capacity assessment. Having reviewed the ALJ's analysis, the undersigned finds the

ALJ's evaluation is supported by substantial evidence.

### B. *Erroneously Assessed RFC*

Plaintiff contends the ALJ failed to properly assess Mr. Johnson's RFC in accordance

with Social Security Ruling 98-6p.[21] Plaintiff claims the ALJ "failed to set forth a narrative

discussion describing how the evidence supported each conclusion, citing specific medical facts

---

[21]   Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 (Jul. 2, 1996).

and nonmedical evidence. For example, the Administrative Law Judge failed to explain how he arrived at his conclusions that the Plaintiff was limited to light work, required a sit/stand option, and required limited public contact." ECF No. 12-1 at 5.

Having reviewed the ALJ's decision, the undersigned disagrees. For instance, when Mr. Johnson was examined by Dr. Sloan in December 2007, Mr. Johnson reported he can lift 100 pounds, stand 8-9 hours at one time, sit for 5-6 hours and walk on level ground for one mile. R. at 398. However, when Dr. Sloan re-examined him in June 2008, Mr. Johnson reported an ability to lift 30-40 pounds before developing pain. R. at 429. He acknowledged he can stand for 30 minutes to an hour at one time, can sit 4-5 hours out of an 8 hour period and walk on level ground for one mile. R. at 430. When Dr. Sloan tested Mr. Johnson's range of motion, she found "[f]ull range of motion in his shoulders, however, decreased at the right elbow to approximately 140 degrees." R. at 431. The remainder of the examination was normal. The decreased range in motion of the right elbow is consistent with the severe impairment of residual effects of gunshot wound.

The ALJ clearly explains the limitation to light work as follows:

> The undersigned notes that the claimant has admitted to his ability to lift up to 30 or 40 pounds, despite the alleged severity of his right elbow limitation. . . .
>
> Generously granting the benefit of the doubt to the claimant, in light of the impairment reported to Dr. Sloan and despite the abilities documented in treatment records and functional reports, the undersigned accords limited weight to Dr. Hakkarinen's assessment and concludes that the evidence supports a finding that the claimant is limited to performing work at the light exertional level.

R. at 25. Dr. Hakkarinen opined Mr. Johnson can perform work at the medium exertional level. *See* R. at 433.

As to the sit/stand option, the ALJ granted the benefit of the doubt to Mr. Johnson, based on what he reported to Dr. Sloan during the June 2008 examination. Among the matters Mr. Johnson disclosed was an ability to stand for only 30 minutes to an hour at one time. *See* R. at 430.

Dr. Dale, Dr. Keyes and Dr. Walcutt each opined Mr. Johnson is **not** significantly limited in his ability to interact appropriately with the general public. *See* R. at 320, 401, 455. The ALJ's finding is more restrictive than these three medical source opinions. None of these medical sources examined Mr. Johnson. However, Dr. Taller conducted a consultative psychiatric examination of Mr. Johnson on June 13, 2008. Dr. Taller recorded her observations and mental status evaluation of Mr. Johnson. She noted, among other things, "[h]is initial belligerence subsides as the interview progresses . . . His affect is blunted." R. at 420. After listing her diagnostic impression Dr. Taller opined, "[h]is social interaction was significant for blunted and superficial affect." *Id.* Dr. Taller's opinion provides a basis for the ALJ's finding.

As Defendant acknowledges in its brief, the ALJ's RFC assessment, as documented in the decision, *omitted* a limitation to *unskilled* work. ECF No. 14-1 at 20. This limitation however was part of the hypothetical question posed by the ALJ to the VE. *See* R. at 49-50. Thus the VE's identification of other jobs in the national economy incorporates this limitation. Mr. Johnson has testified, the mental residual functional capacity assessments reflect, and the comprehensive career assessment report documents Mr. Johnson's moderate limitation to carry out detailed instructions and/or to maintain attention and concentration for extended periods. The ALJ therefore appropriately limited Mr. Johnson to unskilled work. "A skill is knowledge of a work activity that requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation that is above the

unskilled level (requires more than 30 days to learn)."  SSR 00-4p[22], 2000 WL 1898704, at *3

(Dec. 4, 2000).  Plaintiff fails to demonstrate the ALJ's RFC assessment is erroneous.

5.  **Conclusion.**

Substantial evidence supports the decision that Mr. Johnson is not disabled.  Accordingly,

Defendant's Motion for Summary Judgment will be granted and Plaintiff's Motion for Summary

Judgment will be denied.

Date: April 11, 2014                                    _____/s/_____
                                                                    WILLIAM CONNELLY
                                                                    UNITED STATES MAGISTRATE JUDGE

---

[22]   Policy Interpretation Ruling: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions.